## CASE NO. 12-16718
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

**EDVARD ESHAGH, on behalf of himself and all other similarly situated,**
**Plaintiff – Appellant,**
v.
**THE TERMINIX INTERNATIONAL COMPANY, L.P., a limited**
**partnership, and TERMINIX INTERNATIONAL, INC.**
**Defendants – Appellees.**
_____

## APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF CALIFORNIA
## Case No. 1:11-cv-00222-LJO-DLB
_____

## REPLY BRIEF OF APPELLANT EDVARD ESHAGH, on behalf of himself
## and all other similarly situated
_____

Thomas F. Campbell
CAMPBELL LAW PC
One Chase Corporate Drive, Suite 180
Birmingham, AL 35244
Telephone: (205) 278-6650

W. Scott Simpson
Christina M. Saunders
SIMPSON, McMAHAN, GLICK &
BURFORD PLLC
2700 Hwy. 280, Suite 203W
Birmingham, AL 35223
Telephone: (205) 876-1600

H. Tim Hoffman
HOFFMAN LIBENSON SAUNDERS & BARBA
180 Grand Avenue, Suite 1550
Oakland, CA 94612
Telephone: (510) 763-5700

Arthur W. Lazear
LAZEAR MACK
436 – 14th Street, Suite 1117
Oakland, CA 94612
Telephone: (510) 735-6316

**Attorneys for Plaintiff-Appellant Edvard Eshagh**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES ...................................................................iv

ARGUMENT .........................................................................................1

I.     Terminix Moved for Arbitration Under California Law. ...............................1

II.    The FAA Supports the Application of Both a State and Federal Standard for Waiver. .........................................................................................3

III.   Terminix Waived its Right to Arbitration Under the FAA and California Law. ...........................................................................................4

      a.     Terminix's litigation activities support a finding of waiver. ...............5

      b.     Terminix filed two motions to dismiss, not one, and partially prevailed before the District Court. This is waiver. ..............................7

      c.     The cases cited by Terminix are inapplicable to the case at bar. ........12

      d.     *Hooper* and *Mirant* are modern cases that analyze waiver in accordance with the Ninth Circuit standard and are analogous to the case at bar. ...................................................................................14

      e.     Eshagh has shown prejudice. .............................................................16

IV.    Terminix Waived its Right to Arbitration under California Law.................21

      a.     *Gonsalves* demonstrates that Terminix has waived its rights to arbitrate under California law. ...........................................................21

      b.     Terminix's litigation activity prior to compelling arbitration substantially invoked the litigation machinery. ..................................22

      c.     Terminix unreasonably delayed compelling arbitration. ...................23

      d.     Terminix took advantage of procedures not available in arbitration. .........................................................................................24

      e.     Eshagh was prejudiced by Terminix's actions....................................25

V.      The Arbitration Agreement is Unconscionable. ............................................ 26

VI.     The Arbitration Agreement is Illusory. ....................................................... 27

VII.    The Court Erred in Striking Class Claims. .................................................. 28

CONCLUSION ............................................................................................................ 30

CERTIFICATE OF COMPLIANCE ......................................................................... 31

STATEMENT OF RELATED CASES ...................................................................... 32

ADDENDUM

# TABLE OF AUTHORITIES

**Cases**

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) ............................................3

*AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) ...............................4, 6

*Ayala v. Terminix International Co., L.P*, Cal. Sup. Ct. County of Los

  Angeles, No. BS130392 (class action filed March 20, 2009) .............................7

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996

  (9th Cir. 2010) ............................................................................... 26, 27

*Britton v. Co-Op Banking Group*, 4 F.3d 742 (9th Cir. 1993) ...............................11

*C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of*

  *Oklahoma*, 532 U.S. 411 (2001) ...........................................................29

*Cabinetree of Wis. v. Kraftmaid Cabinetry*, 50 F.3d 388 (7th Cir. 1995)..............20

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (U.S. 2003) ........................................2

*Com-Tech Assocs. v. Computer Assocs. Int'l*, 938 F.2d 1574 (2d Cir.

  1991).................................................................................................13

*Crow v. U.S.*, 186 F.2d 704 (9th Cir. 1951)..............................................................2

*Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213 (1985).........................................12

*Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)...............................................................4

*Fantastic Sams Franchise Corp. v. FSRO Assoc. Ltd.*, 683 F.3d 18 (1st

  Cir. 2012) ...........................................................................................28

*Fisher v. A.G. Becker Paribas Incorporation*, 791 F.2d 691 (9th Cir.

    1986)........................................................................ 5, 9, 13, 17, 21

*Gentry v. Superior Court,* 165 P.3d 556 (2007) .......................................................6

*Global Security & Communications, Inc. v. AT&T*, No. 98-36061, 1999

    WL 513873 (9th Cir. July 20, 1999)....................................................19

*Gonsalves v. Infosys Techs., Ltd.*, No. C 3:09-04112, 2010 U.S. Dist.

    LEXIS 79683 (N.D. Cal. Aug. 5, 2010) ...................................... 21, 22

*Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) ..........................................29

*Gutierrez v. Wells Fargo Bank*, 704 F.3d 712 (9th Cir. 2012)..................................6

*Hooper v. Advance Am.*, 589 F.3d 917 (8th Cir. 2009) .................... 7, 10, 15, 18, 24

*In re Mirant Corp.*, 613 F.3d 584 (5th Cir. 2010) ........................................... 11, 16

*Jock v. Sterling Jewelers Inc.*, 646 F.3d 113 (2d Cir. 2011) ...................................28

*Lake Communications, Inc. v. ICC Corp.,* 738 F.2d 1473 (9th Cir. 1984) ...........8, 9

*Lhotka v. Geographic Expeditions, Inc.*, 104 Cal. Rptr. 3d 844 (2010)..................26

*Martinez v. Welk Grp., Inc*., No. 09cv2883, 2012 WL 112535 (S.D. Cal.

    Jan. 12, 2012) ....................................................................................24

*McConnell v. Merrill Lynch, Pierce, Fenner, & Smith, Inc*., 164 Cal. Rptr.

    751 (Ct. App. 1980) ...........................................................................22

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614

    (1985) ............................................................................................ 12, 13

*Morse v. ServiceMaster Global Holdings Inc.*, No. 10–00628, 2011 WL
    3476525 (N.D. Cal. Aug. 9, 2011)....................................................6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ......3, 24

*Nakano v. ServiceMaster Global Holding, Inc.*, No. 09–05152, 2011 WL
    3206592 (N.D. Cal. July 27, 2011) ......................................................6

*People v. Zamora*, 557 P.2d 75 (1976) ..................................................18

*Quevedo v. Macy's, Inc*., 798 F. Supp. 2d 1122 (C.D. Cal. 2011) ................... 22, 23

*R. J. Cardinal Co. v. Ritchie*, 32 Cal. Rptr. 545 (1963)..........................................27

*Rush v. Oppenheimer & Co.*, 779 F.2d 885 (2d Cir. 1985) ......................... 9, 10, 13

*Sanford v. MemberWorks, Inc*., 483 F.3d 956 (9th Cir. 2007) ...........................1, 29

*Shroyer v. New Cingular Wireless Servs., Inc*., 498 F.3d 976 (9th Cir.
    2007)..........................................................................................29

*Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038 (9th Cir. 2001).............................27

*St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 82 P.3d 727 (Cal. 2003) ..................5, 21

*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 130 S.Ct. 1758
    (U.S. 2010) ..................................................................................29

*Sutter v. Oxford Health Plans LLC*, 675 F.3d 215 (3d Cir. 2012) ..........................28

*Sweater Bee by Banff, Ltd. v. Manhattan Industries, Inc*., 754 F.2d 457
    (2d Cir. 1985) .......................................................................... 8, 9, 13

*United Computer Sys. v. AT&T Info. Sys.*, 298 F.3d 756 (9th Cir. 2002) .. 11, 17, 20

vi

*United States v. Carlson*, 900 F.2d 1346 (9th Cir. 1990) ...........................................6

*United Steelworkers of Am. v. Am. Mfg. Co.,* 363 U.S. 564 (1960) ........................18

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford*

*Junior University*, 489 U.S. 468 (1989)...............................................................7

*Wakefield v. Thompson*, 177 F.3d 1160 (9th Cir. 1999)..........................................18

*Woolls v. Superior Court*, 25 Cal. Rptr. 3d 426 (2005)............................................2

**Statutes**

9 U.S.C. § 2..............................................................................................................4

9 U.S.C. § 4..............................................................................................................3

**Other Authorities**

AAA, Supplementary Rules for Class Arbitrations (effective Oct. 8, 2003) ..........30

Bedell, Stephen P. et al., *Arbitrability: Current Developments in the*

*Interpretation and Enforceability of Arbitration Agreements*, 13 J.

Contemp. L. 1, 5 (1987)......................................................................................12

## <u>ARGUMENT</u>

Terminix waived its right to compel arbitration when it engaged the litigation machinery, delayed moving for arbitration for almost seven months, filed two motions to dismiss, filed an answer, and caused multiple claims to be dismissed in the trial court. Dismissal of claims with prejudice is the harshest outcome a litigant can suffer; therefore, the fact that Terminix actively pursued such an outcome, and ultimately succeeded, demonstrates that Terminix has chosen the district court forum and waived its right to arbitrate. In addition, Terminix drafted an arbitration agreement that is both unconscionable and illusory. Consequently, the District Court erred in compelling arbitration and dismissing class claims. Terminix's Brief to this Court is rife with the arguments that led the District Court into error, each of which is thoroughly refuted below.

## I.     Terminix Moved for Arbitration Under California Law.

Terminix contends that it compelled arbitration under the FAA instead of state law.[1] However, this contention is contradicted by the identical prayers for relief in Terminix's Motion and Memorandum:

> WHEREFORE defendants, TERMINIX INTERNATIONAL, INC. and THE TERMINIX INTERNATIONAL COMPANY LIMITED PARTNERSHIP, pray that this Honorable Court enter an order (1) compelling arbitration and staying this litigation, **<u>pursuant</u>**

---

[1] The District Court's decisions regarding which law to apply are questions of law that are reviewed *de novo*. *Sanford v. MemberWorks, Inc*., 483 F.3d 956, 960 (9th Cir. 2007).

> **to applicable California law** and the parties' arbitration agreement and (2) striking all class action allegations from plaintiff's First Amended Complaint. Further, defendants request that the Court grant all other just and appropriate relief.[2]

Thus, Terminix sought relief under the arbitration agreement in accordance with California law, not the FAA. Terminix invoked California law and should be held to its request. *See Crow v. U.S.*, 186 F.2d 704, 706 (9th Cir. 1951) ("Courts cannot be required to search for possible grounds upon which to grant relief."). Moreover, Terminix cannot overcome the fact that it failed to demonstrate interstate commerce in its papers and, at this late date, relies solely on other cases involving different facts and parties in order to try and prove interstate commerce in the instant action.[3] However, the burden to show interstate commerce rests on Terminix at the district court level, and Terminix can point to no language whatsoever in its pleadings in **this case** where it carried that burden. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (U.S. 2003) (explaining that a party moving for arbitration must show that the economic activity in question represents a general practice subject to federal control); *Woolls v. Superior Court*, 25 Cal. Rptr. 3d 426, 436-37 (2005) ("We begin with the premise that '[a]lthough federal law may preempt state law, '[c]ourts are reluctant to infer preemption, and it is the

---

[2] E.R. 098, 099 (emphasis added).
[3] Appellees' Brief, p. 22, n. 1.

2

burden of the party claiming that Congress intended to preempt state law to prove it.'"). Consequently, California law should apply to this dispute.

## II.    The FAA Supports the Application of Both a State and Federal Standard for Waiver.

Terminix claims that there is no support anywhere in case law for Eshagh's position that, in the event this Court finds that Terminix properly sought relief under 9 U.S.C. § 4, waiver should be analyzed under state and federal law. In support of this argument, Terminix cites to what it claims is directly-quoted United States Supreme Court precedent: "'unless the agreement provides otherwise, all questions regarding interpretation of arbitration agreements are determined by federal standards.' *Moses H. Cone*, 460 U.S. at 24."[4] However, this remark does not exist anywhere in *Moses H. Cone*, United States Supreme Court precedent, Circuit Court precedent, or even District Court precedent. What is worse, controlling precedent is completely at odds with Terminix's argument because the U.S. Supreme Court has held that arbitration agreements are to be interpreted under state contract law principles. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009) ("'[S]tate law,' therefore, is applicable to determine which contracts are binding under § 2 and enforceable under § 3 'if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'")

---

[4] Appellees' Brief, p. 24.

3

Consequently, the Court should reject Terminix's argument that only federal law applies as unsupported and contrary to precedent.

Because Terminix moved for arbitration under state law, only state law contract principles apply. However, even if this Court finds that Terminix invoked the FAA, waiver should be analyzed both under Section 4 of the FAA and state contract law principles because the FAA particularly carves out a savings clause that makes arbitration contracts subject to the same "grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Contract law is necessarily based in state law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Hence, an arbitration agreement can be waived under both Section 4 of the FAA and/or state contract law, so long as the state law did not come about solely to invalidate arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1747 (2011). Consequently, Eshagh submits that the language of the FAA supports a two-pronged analysis of both state and federal waiver law. Moreover, Eshagh has shown that Terminix waived its right to arbitration under both federal and state standards.

## III.   Terminix Waived its Right to Arbitration Under the FAA and California Law.

Terminix pursued a motion to dismiss, won on substantive issues, filed an answer, another motion to dismiss, and only then compelled arbitration. This conduct meets the waiver standard in *Fisher v. A.G. Becker Paribas Incorporation*,

4

791 F.2d 691, 693 (9th Cir. 1986) and the California Supreme Court in *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 82 P.3d 727, 733 (Cal. 2003).[5]

### a. Terminix's litigation activities support a finding of waiver.

Terminix frequently and incorrectly asserts that the "only litigation activity was a Motion to Dismiss the Original Complaint."[6] This misstates the procedural history of this case.[7] Terminix filed a lengthy motion to dismiss all claims and had it granted in part, which precipitated Eshagh filing an Amended Complaint at the Court's direction, after which Terminix filed its Answer and yet another motion to dismiss on substantive issues before moving to compel arbitration.[8] Terminix seeks to whitewash the record and downplay its litigation activities. However, Terminix moved to dismiss claims and won, which is waiver under any standard.

Next, in a newly-fashioned argument which was never raised before the District Court, Terminix claims that the decision in *Concepcion* pardons its actions in the District Court that amount to waiver.[9] (Appellees' Brief, p. 27). This issue cannot be raised for the first time on appeal. *United States v. Carlson*, 900 F.2d

---

[5] The standard of review for the District Court's order compelling arbitration is *de novo. Fisher,* 791 F.2d at 693.

[6] Appellees' Brief, p. 26.

[7] E.R. 276-284.

[8] *Id.*

[9] In particular, Terminix filed a motion to dismiss prior to *Concepcion*, gained a dismissal with prejudice of claims after *Concepcion*, filed an answer after *Concepcion*, filed yet another motion to dismiss after *Concepcion*, and only then filed a motion to compel arbitration five months after *Concepcion* was decided. (E.R. 276-284).

1346, 1349 (9th Cir. 1990) ("Our general rule is that we will not consider issues raised for the first time on appeal.")

But even if the Court considers this argument, Terminix's assertion that *Concepcion* alters the outcome of the waiver analysis in this case is incorrect. The *Concepcion* holding struck down the *Discover Bank* rule, which was that explicit class action waivers in arbitration agreements were unenforceable under California public policy. *Concepcion*, 131 S. Ct. at 1751. The arbitration agreement at issue here sets forth no class action waiver; therefore, *Concepcion* did not change the outcome of this case.[10] *See Gutierrez v. Wells Fargo Bank*, 704 F.3d 712, 721 (9th Cir. 2012) (holding that consumer arbitration agreement which lacked a class action waiver was not impacted by the *Concepcion* decision.).

Moreover, Terminix confuses the right to arbitrate generally with the "right to arbitrate in the way of Terminix's choosing." Put differently, Terminix wanted to arbitrate, but only if it was guaranteed that it would never have to do so with a class. However, this does not change the fact that Terminix could have compelled

---

[10] Terminix bases its *Concepcion* argument on unpublished cases *Nakano v. ServiceMaster Global Holding, Inc.*, No. 09–05152, 2011 WL 3206592 (N.D. Cal. July 27, 2011) and *Morse v. ServiceMaster Global Holdings Inc.*, No. 10–00628, 2011 WL 3476525 (N.D. Cal. Aug. 9, 2011), which are distinguishable because they turn on employee, not consumer, arbitration rights and whether *Gentry v. Superior Court,* 165 P.3d 556 (2007) still applies post-*Concepcion*.

6

arbitration before *Concepcion* and could have done so after *Concepcion*.[11] Furthermore, Terminix's flawed reasoning – that because it couldn't arbitrate on the procedural footing it wanted it was somehow unable to compel arbitration – is unavailing because "[t]here is no federal policy favoring arbitration under a certain set of procedural rules." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 476 (1989). Consequently, *Concepcion* neither changed the posture of this case nor granted Terminix a reprieve from a finding of waiver based on its litigation tactics.

### b.    Terminix filed two motions to dismiss, not one, and partially prevailed before the District Court. This is waiver.

Terminix asserts that filing a motion to dismiss, and nothing more, does not amount to waiver.[12] First, this is an overstatement. *See Hooper v. Advance Am.*, 589 F.3d 917, 922 (8th Cir. 2009) ("Motions to dismiss are not homogeneous. District courts should continue to consider the totality of the circumstances."). More importantly, the "simple" filing of a single motion to dismiss is not what took place here. Rather, Terminix filed two motions to dismiss and had one granted in part, which led to the dismissal of some of Eshagh's claims with and without prejudice. Terminix seeks to have this Court view the initial motion to dismiss in a

---

[11] In fact, Terminix arbitrated a class action case pre-*Concepcion* in *Ayala v. Terminix International Co., L.P*, Cal. Sup. Ct. County of Los Angeles, No. BS130392 (class action filed March 20, 2009) (dismissed per binding arbitration May 14, 2009).

[12] Appellees' Brief, pp. 27-28.

vacuum and ignore the Court's grant of dismissal, Terminix's answer, and its second motion to dismiss. Neither the Record nor case law supports this view.

Terminix attempts to excuse its litigation activity by arguing that Eshagh's five-count Complaint was lengthy and complex.[13] However, Terminix's motions to dismiss dispute this point. In fact, in Terminix's own words, it urged dismissal because "the UCL and FAL claims were not pled with sufficient specificity, and that the breach of contract claim did not sufficiently describe the contract(s) at issue or the provisions claimed to have been breached."[14] Consequently, in the District Court, Terminix argued the Complaint was not nearly detailed or specific enough; however, now on appeal, Terminix finds the Complaint too detailed and specific. Later, once Eshagh filed his Amended Complaint, which set forth claims with even more specificity, Terminix moved to dismiss again for lack of detail.[15] Thus, Terminix has changed its argument on appeal in an attempt to shoehorn its procedural posture into the mold of Terminix's cases *Lake Communications, Inc. v. ICC Corp.,* 738 F.2d 1473 (9th Cir. 1984) and *Sweater Bee by Banff, Ltd. v. Manhattan Industries, Inc*., 754 F.2d 457 (2d Cir. 1985).

However, such an attempt is further contradicted by those cases. For example, in *Sweater Bee*, "[t]he amended complaint alleged seventeen antitrust

---

[13] Appellees' Brief, p. 28.
[14] Appellees' Brief, p. 15.
[15] E.R. 101-102.

claims, four false-designation-of-origin claims under 15 U.S.C. § 1125(a) (1982), two federal common law claims, several pendent state law claims, and a claim for conditional vacatur . . *.*" *Sweater Bee*, 754 F.2d at 459. Thus, *Sweater Bee*'s complaint was intricate and alleged several non-arbitrable claims. *Id*. Similarly, in *Lake Communications*, the complaint set forth 16 claims – a mix of arbitrable and non-arbitrable – including federal Sherman Act violations, federal Clayton Act violations, federal conspiracy, California Cartwright Act violations, California Unfair Trade Practice Act violations, and several state law causes of action. *Lake Communications*, 738 F.2d at 1475-76; *see also Fisher*, 791 F.2d at 693 ("The complaint alleged violations of federal securities laws as well as pendent state securities and common law claims."). In stark contrast, Eshagh's five-count Complaint, which sets forth solely state law claims easily encompassed by Terminix's broad arbitration agreement, does not even approach *Sweater Bee* or *Lake Communications*' level of complexity. Consequently, Terminix's newly-adopted contention that the Complaint was so detailed and intricate such that it necessitated motions to dismiss is unavailing.

Terminix also seeks to explain away its motions to dismiss by arguing that some of the claims advanced by Eshagh could have been non-arbitrable, and Terminix was simply trying to distinguish arbitrable from non-arbitrable claims in accordance with the holdings of *Sweater Bee* and *Rush v. Oppenheimer & Co.*, 779

F.2d 885 (2d Cir. 1985).[16] Tellingly, Terminix does not say which claims it believes are not within the scope of its arbitration agreement. If this were a serious contention, Terminix would have moved in the District Court to dismiss the non-arbitrable claims and simultaneously moved to compel arbitration of the arbitrable claims. *See Hooper*, 589 F.3d at 922 ("The problem with Advance America's argument is that its motion to dismiss sought more than clarification. Advance America did not, for example, file a motion to dismiss Count I for lack of jurisdiction and simultaneously move to compel arbitration on Counts II through VII pending the district court's ruling."). Terminix did not seek clarification; instead, it sought "an immediate and total victory in the parties' dispute." *Hooper*, 589 F.3d at 922.

In fact, Terminix argued before the trial court that **<u>all claims</u>** advanced by Eshagh were subject to the arbitration agreement:

> With respect to whether the arbitration agreement covers the instant dispute, the agreement specifically states that it applies to "all matters in dispute between them including but not limited to any controversy or claim between them arising out of or relating to this agreement or to the identified property in any way . . . ." … **Accordingly, the arbitration agreement is sufficiently broad to encompass the instant dispute.**[17]

---

[16] Appellee's Brief, p. 30, n. 2.
[17] Supp. E.R. 000165 (emphasis added).

Thus, Terminix drafted a broad arbitration agreement that it asserted would cover the entirety of the instant dispute.[18]  In fact, Terminix knew the arbitration agreement would encompass each of Eshagh's claims because Ninth Circuit case law describes the "arising out of or relating to" and the "any controversy or claim" language within the agreement as "capacious" and broad enough to capture any dispute. *United Computer Sys. v. AT&T Info. Sys.*, 298 F.3d 756, 766 (9th Cir. 2002); *Britton v. Co-Op Banking Group*, 4 F.3d 742, 745 (9th Cir. 1993). Moreover, Eshagh never controverted Terminix's assertion that all claims could be subject to the arbitration agreement if timely raised: "Plaintiff does not challenge Terminix's assertion that the arbitration agreement encompasses the instant dispute."[19] As was true in *Mirant*, "[h]ere, there is no dispute that the claims at issue in [plaintiff's] amended complaints were subject to the arbitration agreement." *In re Mirant Corp.*, 613 F.3d 584, 592 (5th Cir. 2010). As a result, Terminix's newly-manufactured position – never mentioned in the District Court and only first proffered on appeal – that the arbitration agreement may not have reached all claims is utterly without merit and contradicted by the Record.

The foregoing effectively demonstrates that Terminix did not file its Motions to Dismiss in order to clarify a too-detailed complaint or sort out

---

[18] *Id.*
[19] E.R. 010.

11

arbitrable from non-arbitrable claims. Rather, Terminix filed to dismiss in order to gain a total victory, and only when that failed did Terminix seek the arbitral forum.

### c.    The cases cited by Terminix are inapplicable to the case at bar.

Terminix frequently cites for support the cases Eshagh thoroughly distinguished in his opening brief. In particular, Terminix relies upon *Sweater Bee*, *Rush*, *Lake Communications*, and *Fisher* for the contention that dismissal of arbitrable claims does not amount to waiver. However, this contention is false when applied to the facts here. Importantly, the cases heavily relied upon by Terminix are antiques from a time when Circuit Courts were frequently addressing cases with a mix of arbitrable and non-arbitrable claims as well as the intertwining doctrine, which eventually was struck down by the Supreme Court in *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985).

Beginning in 1985 and following with quick succession, the Supreme Court decided cases that struck down the intertwining doctrine and significantly expanded the FAA's reach to federal statutory claims.[20] *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985). Consequently, the waiver cases that arose contemporaneously focused on how to

---

[20] *See* Bedell, Stephen P. et al., *Arbitrability: Current Developments in the Interpretation and Enforceability of Arbitration Agreements*, 13 J. Contemp. L. 1, 5 (1987).

treat mixed arbitrable and non-arbitrable claims and whether federal statutory claims could be compelled to arbitration at all.

For example, the waiver analysis in *Rush* and *Fisher* – both of which involved arbitrable and non-arbitrable claims – turned on the fact that defendants' delay in moving for arbitration was not prejudicial because arbitration was not an option until *Byrd* was decided during the cases' pendency. *Fisher,* 791 F.2d at 697; *Rush*, 779 F.2d at 889 -90. Also, the decision regarding waiver in *Sweater Bee*, decided pre-*Byrd* and pre-*Mitsubishi*, turned almost exclusively on the complaint which alleged almost 30 claims, many of which were non-arbitrable under the law at that time. *Sweater Bee,* 754 F.2d at 463.[21] *Sweater Bee's* mix of arbitrable (state law) and non-arbitrable (federal statutory) claims led to the court's decision that a motion to dismiss under the circumstances did not amount to waiver and, rather, served to clarify which claims could be compelled and which heard in court. *Id*. Under modern cases, many, if not all, of the federal statutory claims in *Sweater Bee* would be arbitrable. *See Mitsubishi*, 473 U.S. at 627-28. In addition, *Lake Communications* serves as a prime example of the shift of federal statutory claims from non-arbitrable to arbitrable, because its holding that the FAA does not reach certain federal causes of action was overruled by *Mitsubishi.*

---

[21] Even the Second Circuit distinguishes *Sweater Bee* for this proposition in *Com-Tech Assocs. v. Computer Assocs. Int'l*, 938 F.2d 1574, 1577 (2d Cir. 1991).

13

Accordingly, the opinions from the 1980s cited by Terminix were relevant to cases involving a mixed bag of non-arbitrable and arbitrable claims. It was this mix of claims, along with the intertwining doctrine, that engendered the holdings finding the delays in asserting arbitration and the motions to dismiss in these cases did not rise to the level of waiver. Such holdings, however, are not germane to Eshagh's Complaint, which sets forth five state-law based claims that indisputably fall within the broad reach of Terminix's arbitration agreement. Consequently, Terminix's reliance on these cases is misplaced.

### d. *Hooper* and *Mirant* are modern cases that analyze waiver in accordance with the Ninth Circuit standard and are analogous to the case at bar.

In contrast to the 1980s cases, the modern state of the law – that the vast majority of claims, even federal statutory claims, are subject to arbitration agreements – is reflected in cases such as *Hooper* and *Mirant*. In *Hooper* and *Mirant*, all claims advanced by plaintiffs were arbitrable. The same is true for Eshagh. Consequently, the waiver analysis used by the Eighth and Fifth Circuits is instructive in the instant case.

Terminix's attempt to distinguish *Hooper* is utterly unavailing as evidenced by the lack of any pin-cite or reference to any actual holding whatsoever in Terminix's argument. Terminix claims that the fact that the parties in *Hooper* gave initial discovery disclosures and negotiated a discovery plan – as mentioned in the

14

court's footnote – is enough to distinguish *Hooper* from Eshagh.[22] However, the actual holding in *Hooper* makes no mention of the minimal discovery, nor does it find the Motion to Dismiss composed of "complex novel issues" as claimed by Terminix.[23] Terminix's analysis of *Hooper* is entirely unsupported.

Rather, the crux of the *Hooper* holding is that the defendant filed a motion to dismiss arbitrable claims, won relief on that motion, and only then compelled arbitration. "Therefore, we hold Advance America waived its right to arbitration when it **filed and pursued its motion to dismiss**." *Hooper*, 589 F.3d at 924 (emphasis added). Like the defendant in *Hooper*, Terminix's argument consists solely of "reemphasiz[ing] the timing of its motion and reiterate[ing] the parties did not engage in discovery or participate in any hearings." *Id.* at 923. Terminix's arguments before this Court are nearly identical to, and just as unpersuasive as, Advance America's failing arguments in *Hooper*.

Terminix's attempts to distinguish *Mirant* are likewise unsupported by an actual citation from the case itself.[24] *Mirant* is similar to this case in that all the claims set forth in the complaint were arbitrable, and the Court there found that seeking a decision by prosecuting a motion to dismiss a complaint with prejudice is waiver:

---

[22] Appellees' Brief, p. 34.
[23] *Id*.
[24] Appellees' Brief, p. 35.

> As the district court observed, "[a] dismissal with prejudice for failure to state a claim is a decision on the merits and essentially ends the plaintiff's lawsuit." . . . Here, Castex partially succeeded on its third motion to dismiss when the district court dismissed MCAR's claim for breach of fiduciary duty with prejudice. Castex's request for a dismissal with prejudice reinforces our conclusion that it sought a decision on the merits in this case.

*In re Mirant Corp.*, 613 F.3d at 589. Moreover, like the Defendant in *Mirant*, Terminix "moved to compel arbitration only after the district court had partially denied its [] motion to dismiss, despite being fully aware of its right to compel arbitration from the outset." *Id.* at 590. The procedural facts of *Mirant* are somewhat more complicated, but the basics are the same – just as in *Mirant*, Terminix waited to compel arbitration until after it tested the litigation waters with two motions to dismiss aimed at dismantling the Complaint in its entirety. Because of Terminix's actions, Eshagh suffered delay, expense, and damage to his legal position. *Id.* at 591. In conclusion, Terminix's actions constitute waiver in both the Fifth and Eighth Circuits – both of which use the same standard for waiver as the Ninth Circuit – and should constitute waiver in this case.

### e.     Eshagh has shown prejudice.

Dismissal with prejudice of arbitrable claims is the strongest possible evidence of waiver because of the inherently, and devastatingly, prejudicial effect of such a dismissal. Eshagh submits that if one considers prejudice on a continuum of waiver, dismissal with prejudice would be at the extreme end of the spectrum.

16

Terminix argues, however, that having claims dismissed with prejudice by the District Court did not prejudice Eshagh's case. In support of this untenable position, Terminix cleaves to the single most egregious finding of law in the Magistrate's opinion. Concerning the dismissed claims, the Magistrate held that "[t]his outcome would not have changed if the matter was in arbitration."[25]

First, imputing the District Court's decision to the arbitrator is as improper as it is clairvoyant. No one knows what the arbitrator would have done with the dismissed claims because Terminix chose to litigate them instead of compelling arbitration. Second, the waiver standard is not, as Terminix seems to believe, "whether the district court thinks the arbitrator would have decided the same way." Waiver is not based on outcomes, especially outcomes that could not possibly be known. Rather, waiver is based on the conduct of the party seeking arbitration and the resulting prejudice. *See Fisher,* 791 F.2d at 694.

The Magistrate's opinion also is in error because a district court cannot compel only the claims it finds meritorious to arbitration. *See United Computer Sys.*, 298 F.3d at 766 ("The arbitration clause at issue here requires that 'any controversy or claim' arising from the Agreement be resolved by arbitration, including arguably frivolous claims that have already been addressed in an earlier arbitration … the Federal Arbitration Act prohibits us from ruling on the merits of

---

[25] E.R. 012.

a substantive dispute between the parties to an arbitration agreement when they have indicated a desire to arbitrate.")[26]; *see also United Steelworkers of Am. v. Am. Mfg. Co.,* 363 U.S. 564, 567 (1960). If all claims are arbitrable, then the court must compel all or none. *Id*. If the compelling party litigates piecemeal, as Terminix has done here, then it has waived its right to arbitration.

Eshagh further disputes Terminix's assertion that the claims would have been dismissed before the arbitrator and Terminix's argument that having claims dismissed with prejudice has no impact on a case. As a matter of course, dismissal with prejudice is a final, binding adjudication. *See Wakefield v. Thompson*, 177 F.3d 1160, 1162 (9th Cir. 1999) (holding that a dismissal with prejudice "sends a party out of court" and is, therefore, the most final of adjudications.).

In addition to the insurmountable prejudice of dismissed claims, Eshagh was further prejudiced by revealing litigation strategies in responding to Terminix's motion to dismiss. In its Brief, Terminix disputes neither this point nor the point that Terminix, if arbitration is compelled, will seek to re-litigate the motion to dismiss, forcing Eshagh to fight the same fight over again and expend more money doing so. Revealing litigation tactics and having to re-argue the motion to dismiss are highly prejudicial to Eshagh. *See Hooper*, 589 F.3d at 923 ("Compelling

---

[26] Statutes of limitation are substantive, not procedural, under California law. *See People v. Zamora*, 557 P.2d 75, 80-81 (Cal. 1976) ("Furthermore, in California the statute of limitations constitutes a substantive rather than a procedural right …").

arbitration presumably would require a duplication of effort insofar as Advance America in arbitration would reargue issues upon which the district court ruled.").

Furthermore, Eshagh already incurred substantial sums responding to Terminix's first motion to dismiss.[27] Terminix argues that Eshagh's litigation costs regarding the motion to dismiss were not prejudicial. Terminix cites the unpublished opinion *Global Security & Communications, Inc. v. AT&T*, No. 98-36061, 1999 WL 513873 (9th Cir. July 20, 1999), in violation of Ninth Circuit Rule 36-3(c), for the proposition that costs incurred in responding to a motion to dismiss are not sufficient evidence of prejudice.[28] However, *Global Security* is inapposite to the case at bar, because "[a]t the time AT&T filed the motions to dismiss and to strike and the request for judicial notice, it had no knowledge of whether the agreements at issue in the complaint contained an arbitration clause." *Global Security*, 1999 WL 513873, at *2. Consequently, because the motions to dismiss were filed and argued before the parties knew of the arbitration agreement, the costs of fighting the motion to dismiss were not taxed against the defendant as prejudice. This is not the case in *Eshagh*, because Terminix was aware of the arbitration agreement from the beginning, yet chose to litigate.

---

[27] E.R. 090. Eshagh also incurred over $135,000 in preparing for trial. Terminix never moved to strike the affidavit of Tom Campbell, and in testimony before the Magistrate, counsel for Eshagh stated that Terminix had a pattern of litigating instead of arbitrating, which was "part of the basis for why we incurred over $100,000 . . . in costs getting ready for a trial…" (Supp. E.R. 000234).

[28] Appellees' Brief, p. 38.

Terminix correctly points out that Eshagh made no attempt in his opening brief to distinguish *United Computer Sys.*, 298 F.3d 756 (9th Cir. 2002) on the issue of litigation costs. This is because *United Computer Sys.* is not even remotely on point with the case at bar for Terminix's proposition that litigation costs are not prejudicial. In *United Computer Sys.*, a particularly unique and complex case involving multiple prior arbitrations, the **plaintiff** United filed to compel arbitration as a count in its complaint against AT&T. After AT&T prosecuted a Motion to Dismiss, United moved to compel arbitration, and AT&T argued waiver. However, this Court held that AT&T did not demonstrate prejudice because the **only** evidence of prejudice offered by AT&T was its costs in **prosecuting** a motion to dismiss after the plaintiff had already sued for arbitration. *United Computer Sys.*, 298 F.3d at 765. This situation is not analogous to that of Eshagh. Eshagh expended litigation costs in **opposing** a motion to dismiss that Terminix chose to file instead of compelling arbitration "at the earliest possible opportunity in order to economize on the resources, both public and private, consumed in dispute resolution." *Cabinetree of Wis. v. Kraftmaid Cabinetry*, 50 F.3d 388, 391 (7th Cir. 1995). Moreover, Eshagh has proven prejudice on multiple fronts, not solely on costs.[29]

---

[29] *See* Eshagh's Principal Brief, pp. 36-38.

Finally, Terminix argues that Eshagh's costs in opposing the motion to dismiss were "self-inflicted" as stated in *Fisher*. 791 F.2d at 698. However, there is no reference in *Fisher* to a motion to dismiss or what prejudice results from a defendant moving to dismiss and then winning dismissal, all the while sitting on its arbitration rights. Rather, in *Fisher*, the right to arbitration did not vest in defendant until after pre-trial litigation had already begun. *Id*. at 695. In contrast, Terminix knew of its right to compel arbitration from the outset, yet refused to do so. Consequently, *Fisher* is distinguishable on this point.

In sum, the District Court erred by holding that Terminix – after litigating and winning – did not waive its right to arbitrate.

## IV.    Terminix Waived its Right to Arbitration under California Law.

Eshagh has met the waiver standard set forth by the California Supreme Court in *St. Agnes*, as demonstrated by the foregoing in addition to particular points of state law discussed below.

### a.    *Gonsalves* demonstrates that Terminix has waived its rights to arbitrate under California law.

*Gonsalves*, a waiver case based in California law, is perfectly on point with *Eshagh*. Terminix argues that *Gonsalves v. Infosys Techs., Ltd.*, No. C 3:09-04112, 2010 U.S. Dist. LEXIS 79683 (N.D. Cal. Aug. 5, 2010) is distinguishable because

21

there the defendant filed two motions to dismiss.[30] However, as demonstrated in

the record, Terminix likewise filed two motions to dismiss.[31] Consequently, the

procedural posture of *Gonsalves* is almost identical to that of *Eshagh*, and

Terminix's arguments to the contrary are unfounded. The *Gonsalves* court's

holding that waiting to file for arbitration until after having claims dismissed with

prejudice demonstrates waiver is completely on point with the facts of *Eshagh* and

evidences that Terminix's actions in the District Court amounted to waiver under

the California standard. *Gonsalves,* 2010 U.S. Dist. LEXIS 79683, at *15.

### b.   Terminix's litigation activity prior to compelling arbitration substantially invoked the litigation machinery.

Terminix asserts that filing a single motion to dismiss did not substantially

invoke the litigation machinery under California law. However, once again,

Terminix misrepresents what occurred in the District Court. Terminix filed two

motions to dismiss and an answer before compelling arbitration and gained a

dismissal with and without prejudice on some of Eshagh's claims. As stated in

*McConnell v. Merrill Lynch, Pierce, Fenner, & Smith, Inc*. "[p]artial or piecemeal

litigation of issues in dispute, through pretrial procedures, may in many instances

justify a finding of waiver …" 164 Cal. Rptr. 751, 753 (Ct. App. 1980). Terminix

then cites *Quevedo v. Macy's, Inc*., 798 F. Supp. 2d 1122 (C.D. Cal. 2011) for the

---

[30] Appellees' Brief, p. 33.
[31] E.R. 277-284.

proposition that "entertaining a motion to dismiss and motion for class certification" has been found insufficient to indicate waiver.[32] However, *Quevedo* is distinguishable because Defendant Macy's did not prevail on a motion to dismiss as Terminix did, and "Macy's reasonably believed that it had no right to enforce its arbitration agreement as written until the Supreme Court decided *AT&T v. Concepcion* in April 2011." *Quevedo*, 798 F. Supp. 2d at 1131.[33] Consequently, *Quevedo* does not excuse Terminix's invocation of the litigation machinery that resulted in the dismissal of otherwise arbitrable claims.

### c.  Terminix unreasonably delayed compelling arbitration.

Eshagh filed suit on February 8, 2011, and Terminix was served a mere nine days later. Despite being on notice that there were arbitrable claims pending, Terminix delayed nearly seven months before moving to compel. Terminix's argument regarding this delay was that it was waiting to see how its motion to dismiss came out before deciding whether to change forums.[34] This behavior – hoping for a full dismissal and a total victory in the trial court, and only compelling arbitration "in recognition of the Court's prior ruling that the entire case was not subject to dismissal" – demonstrates that Terminix's delay was patently

---

[32] Appellees' Brief, p. 42.

[33] Whereas the Terminix contract does not set forth a class action waiver, the employment contract at issue in *Quevedo* does, hence *Concepcion's* applicability. *Quevedo,* 798 F. Supp. 2d at 1127. In addition, Macy's timely filed to compel arbitration less than a month after *Concepcion* was decided.

[34] Appellees' Brief, p. 15.

unreasonable and ill-intended.[35] *See Martinez v. Welk Grp., Inc.*, No. 09cv2883, 2012 WL 112535, at *4 (S.D. Cal. Jan. 12, 2012) ("[Arbitration] is not to be used as a back-up plan for litigation strategies."). Moreover, the six cases regarding delay cited by Eshagh in his principal brief further demonstrate that a delay of seven months is unreasonable, especially when Defendant's sole reason for the delay was to gain an impermissible second bite at the apple after it failed to get all claims dismissed in court. *See Hooper*, 589 F.3d at 922.

### d.   Terminix took advantage of procedures not available in arbitration.

Terminix filed two motions to dismiss, both of which impugned Eshagh's complaints for a lack of specificity and detail in accordance with Rules 8, 9, and 12 of the Federal Rules of Civil Procedure. The first motion resulted in dismissal of claims, and led the District Court to instruct Eshagh to file an Amended Complaint, which pled claims with even more specificity. However, Terminix once again filed to dismiss, claiming Eshagh did not plead with enough detail. In particular, Rules 8, 9, and 12 do not exist in arbitration because arbitration consists of an "expeditious and summary hearing, with only restricted inquiry into factual issues." *Moses H. Cone*, 460 U.S. at 22. Consequently, Terminix took advantage of the pleading requirements under the Federal Rules of Civil Procedure that are not otherwise applicable in arbitration. In addition, as stated *supra* and undisputed,

---

[35] Appellees' Brief, p. 15.

Terminix took advantage of court procedures that required Eshagh to oppose Terminix's motion to dismiss, which revealed Eshagh's litigation strategies and caused Eshagh to expend time and money in court.

Interestingly, Terminix argues that it did not take advantage of procedures unavailable in arbitration because in the arbitrated case of *Flaxman v. Terminix*, Terminix moved to have claims dismissed on statute of limitations grounds and prevailed.[36] However, this point is even more indicative of waiver in the case at bar because, as Terminix unabashedly admits via its *Flaxman* argument, "[t]his issue could have been arbitrated, but defendant sought to litigate it, thereby undermining the public policy in favor of arbitration." *Ontiveros*, 2013 WL 593403, at *10.

### e.     Eshagh was prejudiced by Terminix's actions.

Eshagh has shown in his initial Petition and this Reply that Terminix litigated claims before the District Court and secured dismissals with prejudice. In addition, Eshagh was prejudiced by having to reveal litigation strategies and expend time and money in the District Court to oppose a motion to dismiss that Terminix will only re-launch in the arbitral forum. In sum, Terminix chose to litigate in the District Court forum and should be held to its choice.

---

[36] Appellees' Brief, p. 46.

## V.     The Arbitration Agreement is Unconscionable.

Terminix does not dispute that the arbitration agreement is a procedurally unconscionable contract of adhesion.[37] Instead, Terminix argues that Eshagh is simply "trying to avoid arbitration by identifying provisions in an agreement that are not favorable to him."[38] Consequently, Terminix does not dispute that the arbitration agreement at issue sets forth provisions that are one-sided and favorable to Terminix.

Terminix fails to demonstrate how the wording of a contract which limits any consumer to the remedy of a "re-treatment" of the property "if necessary" lacks substantive unconscionability. Such a provision is analogous to the one in *Lhotka v. Geographic Expeditions, Inc.*, 104 Cal. Rptr. 3d 844 (2010) that stated the hikers could only recover the amount paid for the hiking trip. In fact, the agreement in this case is more substantively unconscionable than the one in *Lhotka*, because here, the consumer cannot receive money damages and is solely limited to a re-treatment, and **only** if Terminix deems it necessary. Eshagh submits that this is no remedy whatsoever for a consumer, because Terminix, in its sole discretion, may never deem a re-treatment "necessary." Moreover, Terminix fails to dispute the fact that the agreement re-allocates risk such that the consumer is

---

[37] The District Court's decision regarding the arbitration agreement's unconscionability is reviewed *de novo*. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010).

[38] Appellees' Brief, p. 49.

required to indemnify Terminix against Terminix's own negligence. These provisions, in tandem with the damages limitation, demonstrate that the arbitration agreement is shocking to the average consumer and, therefore, substantively unconscionable. *See Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1043 (9th Cir. 2001). As a result, the District Court erred when it found the agreement lacking in substantive unconscionability.

## VI.    The Arbitration Agreement is Illusory.

Terminix half-heartedly contends that Eshagh is interpreting the contract's termination and damages provisions over-broadly. However, Terminix has drafted its agreement in such a way as to make its promises illusory because Terminix is free to perform, or not, at its pleasure.[39] The limitation of a "re-treatment, if necessary" applies to the entirety of the contract, including the arbitration agreement. This clause means, in effect, that the contract promises nothing because, in Terminix's sole discretion, it can perform or not, depending on whether it finds such performance "necessary." As such, the arbitration agreement is illusory. *See R. J. Cardinal Co. v. Ritchie*, 32 Cal. Rptr. 545, 557 (1963).

In addition, Terminix's terms allow it to cancel the contract, including the arbitration agreement, unilaterally "[i]n the event of a change in existing law as it

---

[39] The District Court's decision regarding the arbitration agreement's illusory nature is reviewed *de novo. Bridge Fund Capital Corp.* 622 F.3d at 1000.

27

pertains to the services herein . . . ."[40] As Eshagh stated in his opening brief, the law changes in myriad ways every day – through every court ruling and refining of statute – such that Terminix's right to terminate vests immediately upon the execution of the agreement. In practice, Terminix promises nothing, but seeks to bind consumers to arbitration. This meets the definition of an unenforceable, illusory contract under California law.

## VII.   The Court Erred in Striking Class Claims.

Terminix contends that *Stolt-Nielson* prohibits class arbitration in this context but fails to address Eshagh's argument that the District Court was the wrong tribunal to decide this question. Terminix further argues that Eshagh does not dispute Terminix's assertion that the agreement does not provide for class arbitration. This is not true. Eshagh maintains that the arbitrator should decide this issue if the case is ordered to arbitration. Recent post-*Stolt-Nielson* Circuit Court decisions make clear that arbitrators can find an agreement to arbitrate on a class basis even if the contractual text does not expressly so state. *See Fantastic Sams Franchise Corp. v. FSRO Assoc. Ltd.*, 683 F.3d 18, 22-23 (1st Cir. 2012); *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 222 (3d Cir. 2012); *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 123-24 (2d Cir. 2011).

---

[40] E.R. 275.

Terminix cannot overcome Eshagh's argument that the trial court erred because it is the wrong tribunal to decide this issue.[41] First, if Terminix waived its right to arbitrate, then the District Court erred in striking class claims based on arbitration.

Second, even if this Court finds that Terminix did not waive its right to arbitration, the District Court still erred in striking class claims because, as a matter of procedural arbitrability, such actions are the province of the arbitrator. As this Court has held, citing *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003), "whether a contract permits class arbitration is an issue for the arbitrator to decide." *Sanford, Inc*., 483 F.3d at 964; *See also Shroyer v. New Cingular Wireless Servs., Inc*., 498 F.3d 976, 992 (9th Cir. 2007).

Third, because Terminix's arbitration agreement incorporates the Commercial Rules of the American Arbitration Association, these rules become part of the contract and dictate that the arbitrator decides class questions. *See C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 419, n.1 (2001) (stating that the AAA rules become part of a contract when incorporated therein); *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 130 S. Ct. 1758, 1765 (U.S. 2010) ("These rules . . . were developed by the American Arbitration Association (AAA) after our decision in [*Bazzle*] and Class

---

[41] The District Court's decision to strike class claims is a question of law that is reviewed *de novo*. *Sanford*, 483 F.3d at 960.

Rule 3,[42] . . . [and] requires an arbitrator, as a threshold matter, to determine 'whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class.'"). Consequently, under any set of circumstances, the District Court's decision to strike class claims was in error and due to be reversed.

## **<u>CONCLUSION</u>**

The Court should reverse the ruling of the District Court that compelled arbitration, dismissed Eshagh's claims, and struck class claims, and remand the case for further class litigation before the District Court for the Eastern District of California.

**SIMPSON, MCMAHAN, GLICK &
BURFORD, PLLC**

W. SCOTT SIMPSON

CHRISTINA M. SAUNDERS

**CAMPBELL LAW PC**
THOMAS F. CAMPBELL

**HOFFMAN LIBENSON
SAUNDERS & BARBA**
H. TIM HOFFMAN (SBN 49141)

**LAZEAR MACK**
ARTHUR W. LAZEAR (SBN 83603)
**Attorneys for Plaintiffs**

---

[42] AAA, Supplementary Rules for Class Arbitrations (effective Oct. 8, 2003). Addendum A1, p. 2.

## CERTIFICATE OF COMPLIANCE
## <u>PURSUANT TO FED. R. APP. P. 32(a)(7)(C) AND CIRCUIT RULE 32-1</u>

I certify, pursuant to Fed. R. App. P. 32(a)(7)(C) that the foregoing brief is

proportionally spaced, has a typeface of Times New Roman in 14 points, and

contains 6,977 words.

March 28, 2013.                                     _____
                                                    Christina M. Saunders, Esq.

31

## STATEMENT OF RELATED CASES

There are no known other cases related to this appeal.

# **ADDENDUM**

**Other Authority**

AAA, Supplementary Rules for Class Arbitrations.................................................A1

# ADDENDUM A3

# AAA, Supplementary Rules for Class Arbitrations

# Supplementary Rules for Class Arbitrations

Rules Effective October 8, 2003
Fees Effective January 1, 2010

## Table of Contents

1. Applicability                                                                 1

2. Class Arbitration Roster and Number of Arbitrators                            2

3. Construction of the Arbitration Clause                                        2

4. Class Certification                                                           2

5. Class Determination Award                                                     3

6. Notice of Class Determination                                                 4

7. Final Award                                                                   4

8. Settlement, Voluntary Dismissal, or Compromise                                5

9. Confidentiality; Class Arbitration Docket                                     5

10. Form and Publication of Awards                                               5

11. Administrative Fees and Suspension for Nonpayment                            6

12. Applications to Court and Exclusion of Liability                             6

## 1. Applicability

(a) These Supplementary Rules for Class Arbitrations ("Supplementary Rules") shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the American Arbitration Association ("AAA") where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules. These Supplementary Rules shall also apply whenever a court refers a matter pleaded as a class action to the AAA for administration, or when a party to a pending AAA arbitration asserts new claims on behalf of or against a class or purported class.

(b) Where inconsistencies exist between these Supplementary Rules and other AAA rules that apply to the dispute, these Supplementary Rules will govern. The arbitrator shall have the authority to resolve any inconsistency between any agreement of the parties and these Supplementary Rules, and in doing so shall endeavor to avoid any prejudice to the interests of absent members of a class or purported class.

(c) Whenever a court has, by order, addressed and resolved any matter that would otherwise be decided by an arbitrator under these Supplementary Rules, the arbitrator shall follow the order of the court.

## 2. Class Arbitration Roster and Number of Arbitrators

(a) In any arbitration conducted pursuant to these Supplementary Rules, at least one of the arbitrators shall be appointed from the AAA's national roster of class arbitration arbitrators.

(b) If the parties cannot agree upon the number of arbitrators to be appointed, the dispute shall be heard by a sole arbitrator unless the AAA, in its discretion, directs that three arbitrators be appointed. As used in these Supplementary Rules, the term "arbitrator" includes both one and three arbitrators.

## 3. Construction of the Arbitration Clause

Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Clause Construction Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.

In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis.

## 4. Class Certification

(a) Prerequisites to a Class Arbitration

If the arbitrator is satisfied that the arbitration clause permits the arbitration to proceed as a class arbitration, as provided in Rule 3, or where a court has ordered that an arbitrator determine whether a class arbitration may be maintained, the arbitrator shall determine whether the arbitration should proceed as a class arbitration. For that purpose, the arbitrator shall consider the criteria enumerated in this Rule 4 and any law or agreement of the parties the arbitrator determines applies to the arbitration. In doing so, the arbitrator shall determine whether one or more members of a class may act in the arbitration as representative parties on behalf of all members of the class described. The arbitrator shall permit a representative to do so only if each of the following conditions is met:

(1) the class is so numerous that joinder of separate arbitrations on behalf of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately protect the interests of the class;

(5) counsel selected to represent the class will fairly and adequately protect the interests of the class; and

(6) each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representative(s) and each of the other class

members.

(b) Class Arbitrations Maintainable

An arbitration may be maintained as a class arbitration if the prerequisites of subdivision (a) are satisfied, and in addition, the arbitrator finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class arbitration is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(1) the interest of members of the class in individually controlling the prosecution or defense of separate arbitrations;

(2) the extent and nature of any other proceedings concerning the controversy already commenced by or against members of the class;

(3) the desirability or undesirability of concentrating the determination of the claims in a single arbitral forum; and

(4) the difficulties likely to be encountered in the management of a class arbitration.

## 5. Class Determination Award

(a) The arbitrator's determination concerning whether an arbitration should proceed as a class arbitration shall be set forth in a reasoned, partial final award (the "Class Determination Award"), which shall address each of the matters set forth in Rule 4.

(b) A Class Determination Award certifying a class arbitration shall define the class, identify the class representative(s) and counsel, and shall set forth the class claims, issues, or defenses. A copy of the proposed Notice of Class Determination (see Rule 6), specifying the intended mode of delivery of the Notice to the class members, shall be attached to the award.

(c) The Class Determination Award shall state when and how members of the class may be excluded from the class arbitration. If an arbitrator concludes that some exceptional circumstance, such as the need to resolve claims seeking injunctive relief or claims to a limited fund, makes it inappropriate to allow class members to request exclusion, the Class Determination Award shall explain the reasons for that conclusion.

(d) The arbitrator shall stay all proceedings following the issuance of the Class Determination Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Class Determination Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Class Determination Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Class Determination Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.

(e) A Class Determination Award may be altered or amended by the arbitrator before a final award is rendered.

## 6. Notice of Class Determination

(a) In any arbitration administered under these Supplementary Rules, the arbitrator shall, after expiration of the stay following the Class Determination Award, direct that class members be provided the best notice practicable under the circumstances (the "Notice of Class Determination"). The Notice of Class Determination shall be given to all members who can be identified through reasonable effort.

(b) The Notice of Class Determination must concisely and clearly state in plain, easily understood language:

> (1) the nature of the action;

> (2) the definition of the class certified;

> (3) the class claims, issues, or defenses;

> (4) that a class member may enter an appearance through counsel if the member so desires, and that any class member may attend the hearings;

> (5) that the arbitrator will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded;

> (6) the binding effect of a class judgment on class members;

> (7) the identity and biographical information about the arbitrator, the class representative(s) and class counsel that have been approved by the arbitrator to represent the class; and

> (8) how and to whom a class member may communicate about the class arbitration, including information about the AAA Class Arbitration Docket (see Rule 9).

## 7. Final Award

The final award on the merits in a class arbitration, whether or not favorable to the class, shall be reasoned and shall define the class with specificity. The final award shall also specify or describe those to whom the notice provided in Rule 6 was directed, those the arbitrator finds to be members of the class, and those who have elected to opt out of the class.

## 8. Settlement, Voluntary Dismissal, or Compromise

(a) (1) Any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of an arbitration filed as a class arbitration shall not be effective unless approved by the arbitrator.

> (2) The arbitrator must direct that notice be provided in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.

> (3) The arbitrator may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

(b) The parties seeking approval of a settlement, voluntary dismissal, or compromise under this Rule must submit to the arbitrator any agreement made in connection with the proposed settlement, voluntary dismissal, or compromise.

(c) The arbitrator may refuse to approve a settlement unless it affords a new opportunity to request

exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(d) Any class member may object to a proposed settlement, voluntary dismissal, or compromise that requires approval under this Rule. Such an objection may be withdrawn only with the approval of the arbitrator.

## 9. Confidentiality; Class Arbitration Docket

(a) The presumption of privacy and confidentiality in arbitration proceedings shall not apply in class arbitrations. All class arbitration hearings and filings may be made public, subject to the authority of the arbitrator to provide otherwise in special circumstances. However, in no event shall class members, or their individual counsel, if any, be excluded from the arbitration hearings.

(b) The AAA shall maintain on its Web site a Class Arbitration Docket of arbitrations filed as class arbitrations. The Class Arbitration Docket will provide certain information about the arbitration to the extent known to the AAA, including:

   (1) a copy of the demand for arbitration;

   (2) the identities of the parties;

   (3) the names and contact information of counsel for each party;

   (4) a list of awards made in the arbitration by the arbitrator; and

   (5) the date, time and place of any scheduled hearings.

## 10. Form and Publication of Awards

(a) Any award rendered under these Supplementary Rules shall be in writing, shall be signed by the arbitrator or a majority of the arbitrators, and shall provide reasons for the award.

(b) All awards rendered under these Supplementary Rules shall be publicly available, on a cost basis.

## 11. Administrative Fees and Suspension for Nonpayment

(a) A preliminary filing fee of $3,350 is payable in full by a party making a demand for treatment of a claim, counterclaim, or additional claim as a class arbitration. The preliminary filing fee shall cover all AAA administrative fees through the rendering of the Clause Construction Award. If the arbitrator determines that the arbitration shall proceed beyond the Clause Construction Award, a supplemental filing fee shall be paid by the requesting party. The supplemental filing fee shall be calculated based on the amount claimed in the class arbitration and in accordance with the fee schedule contained in the AAA's Commercial Arbitration Rules.

(b) Disputes regarding the parties' obligation to pay administrative fees or arbitrator's compensation pursuant to applicable law or the parties' agreement may be determined by the arbitrator. Upon the joint application of the parties, however, an arbitrator other than the arbitrator appointed to decide the merits of the arbitration, shall be appointed by the AAA to render a partial final award solely related to any disputes regarding the parties' obligations to pay administrative fees or arbitrator's compensation.

(c) If an invoice for arbitrator compensation or administrative charges has not been paid in full, the AAA

may so inform the parties in order that one of them may advance the required deposit. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

(d) If an arbitration conducted pursuant to these Supplementary Rules is suspended for nonpayment, a notice that the case has been suspended shall be published on the AAA's Class Arbitration Docket.

## 12. Applications to Court and Exclusion of Liability

(a) No judicial proceeding initiated by a party relating to a class arbitration shall be deemed a waiver of the party's right to arbitrate.

(b) Neither the AAA nor any arbitrator in a class arbitration or potential class arbitration under these Supplementary Rules is a necessary or proper party in or to judicial proceedings relating to the arbitration. It is the policy of the AAA to comply with any order of a court directed to the parties to an arbitration or with respect to the conduct of an arbitration, whether or not the AAA is named as a party to the judicial proceeding in which the order is issued.

(c) Parties to a class arbitration under these Supplementary Rules shall be deemed to have consented that judgment upon each of the awards rendered in the arbitration may be entered in any federal or state court having jurisdiction thereof.

(d) Parties to an arbitration under these Supplementary Rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action seeking damages or injunctive relief for any act or omission in connection with any arbitration under these Supplementary Rules.

© 2011 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.

| 9th Circuit Case Number(s) | 12-16718 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) 03/28/2013 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | s/ Christina M. Saunders

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)